STAR COMPRESS & WAREHOUSE COMPANY *v.* MERIDIAN COTTON COMPANY.

[39 South. Rep., 417.]

1. WAREHOUSEMEN. *Receipts: Transfer. Innocent purchaser. Laws 1904, ch. 89, p. 125. Evidence.*

It is not permissible, as against a subsequent *bona fide* holder, to show that a warehouse receipt was issued by mistake, where it acknowledges the delivery of merchandise and binds the warehouseman to return the same or pay the market price thereof and stipulates that it shall be negotiable by indorsement and that no debt, demand, or set-off can be claimed against the merchandise, since laws 1904, ch. 89, p. 125, provides that all warehouse receipts shall be conclusive evidence in the hands of a *bona fide* holder for value that the property mentioned in the receipt had been received.

2. SAME. *Notice of existing equity.*

A bank, the holder of a warehouse receipt, is not shown to be a *mala fide* holder by testimony to the effect that one of its officers witnessed the execution of a paper by which a third person undertook to indemnify the warehouseman should it develop that another receipt then delivered to that person for certain merchandise was improperly issued.

3. SAME. *Action on receipt. Issues. Proof variance.*

In a suit on a warehouse receipt testimony intended to establish the delivery of property different from that specified in the receipt and to show that the holder had received the proceeds thereof was not admissible where such issue was not made by the pleading.

FROM the circuit court of Lauderdale county.

HON. ROBERT F. COCHRAN, Judge.

The Meridian Cotton Company (suing for the use of the Meridian National Bank), the appellee, was the plaintiff in the court below; the Star Compress & Warehouse Company, appellant, was defendant there. From a judgment in plaintiff's favor defendant appealed to the supreme court.

The suit was upon a warehouse receipt for twenty bales of cotton issued by defendant to the nominal plaintiff and transferred by it to the usee, the Meridian National Bank, which receipt was in words following—viz. :

"Meridian, Miss., July 19, 1899.—The Star Compress & Warehouse Company has received from Meridian Cotton Company twenty bales cotton, to be compressed, marked, and numbered as per margin, and hereby binds itself to deliver the same, or pay the cash market value thereof, to the legal holder of this receipt, acts of Providence, fire, and damage excepted. This receipt shall be negotiable and transferable by indorsement. No debt, demand, or set-off will be claimed against said cotton, except such as may be due by the holder at the time of presentation."

The defendant offered to prove that the cotton called for by the receipt had been delivered to the cotton company, and that the receipt sued upon had been issued through mistake; but the court below would not allow the proof to be made in the absence of fraud, and gave a peremptory instruction for the plaintiff.

*Ethridge & McBeath,* and *Fewell & Son,* for appellant.

The court below refused to allow the defendant to produce testimony that the very cotton called for by the receipt had been delivered to the cotton company and received by the bank; and not only so ruled, but gave the appellee, the plaintiff below, a peremptory instruction.

The court evidently gave to the receipt a force and effect it was not entitled to, on the idea that it was negotiable, etc., and the error complained of here is that ruling of the court and the giving of the peremptory instruction.

Leaving out of view the fact that the suit was in the name of the Meridian Cotton Company for the use of the bank, the declaration as well as the testimony shows that the bank was not a *bona fide* holder for value of the receipt. It not only appears

that the bank parted with nothing on the faith of the receipt, but it appears also that the receipt was not issued in the usual course of business, but after the season was over, and that it came to the bank discredited. No money was advanced at that time according to the declaration or testimony. The testimony shows that the bank intrusted to the cotton company from time to time receipts pledged with the bank, taking from the cotton company what was called a "trust note," or receipt, and that the cotton company failed to return some of the receipts so handed it. We insist that if the cotton company thus intrusted with the receipts failed to return them or "got away with" them, then the compress company is not liable under that manner of dealing by the bank.

The whole error gathers around the proposition that the court took an erroneous view of the character of the receipt sued on, and we insist that the facts and circumstances in evidence or sought to be put in evidence take away any negotiable quality the receipt would otherwise have had; and not only that, if the bank actually received the proceeds of the very cotton called for by the receipt, as we offered to prove, then the bank had no longer any claim on the compress company.

*Miller & Baskin,* and *Amis & Dunn,* for appellee.

The plaintiff made out a *prima facie* case by introducing in evidence the receipt for the twenty bales of cotton sued for, and by proving demand upon the defendant for the cotton, the failure or refusal to deliver the cotton, and the value of the cotton on the date of the demand for delivery. *Mortimore* v. *Ragsdale,* 62 Miss., 86.

The defendant undertook to rebut the *prima facie* case made by the plaintiff by attempting to show that the receipt was issued through mistake. This defense was not available to the defendant in this case, for the reason that the receipt had become the property of the plaintiff for a valuable consideration, without notice of such mistake.

By the terms of the receipt, it is not only agreed that the cotton will be delivered to the legal holder, but.a higher degree of security is furnished the assignee thereof, thereby inducing higher credit to be given thereto, by the provision therein to the effect that no debt, demand, or set-off will be claimed against said cotton, except such as may be due by the holder of the receipt at the time of presentation. The effect of these provisions is to make the receipt an agreement to deliver the cotton or pay the value thereof to any holder, the effect being the same as a note payable to bearer. This court, in the case of *Bank* v. *Wofford,* 71 Miss., 711 (s.c., 14 South. Rep., 262), says: "There is no magic in the word 'bearer.' A contract to pay to bearer is held not to be within the statute (anti-commercial) referred to, because it embraces only instruments having a payee and requiring assignment to pass title. Therefore, an instrument which by its terms is a promise to pay whoever may bear it; even though the word 'bearer' is not in it, must be of the same effect, because of the same nature."

Truly, J., delivered the opinion of the court.

As to the warehouse receipt, representing the twenty bales of cotton involved in this controversy, the Meridian National Bank is clearly shown to be a *bona fide* holder. The receipt was acquired by the bank in due course of its dealing with a regular customer, for full value, and without notice of any understanding or secret equities which might have existed between the Star Compress & Warehouse Company and the Meridian Cotton Company. Under such state of case the warehouseman issuing the receipt for cotton deposited for storage or compressing cannot be permitted to assert, as against a subsequent *bona fide* holder of such receipt, any defense, unless predicated of fraud, except those expressly provided for in the face of the receipt. The express language of the receipt here under consideration precludes the assertion of the defense by which the appellant

seeks to defeat recovery.    By it the Star Compress & Warehouse
Company acknowledges the receipt of the cotton and "binds
itself to deliver the same, or pay the cash market value thereof,
to the legal holder of this receipt, acts of Providence, fire, and
damage excepted."    It further stipulates that the receipt shall
be negotiable and transferable by indorsement, and then pro-
vides: "No debt, demand, or set-off will be claimed against said
cotton, except such as may be due by the holder at the time of
presentation."    The object of storing cotton and other com-
modities, and accepting in lieu thereof receipts issued by ware-
housemen, is that the owners of the goods so deposited may have
some evidence of ownership easily and readily negotiable, which
may be dealt with without requiring repeated handling and
actual delivery of a bulky commodity.    The negotiability of
such receipts and their commercial value is largely enhanced by
the very fact that they are incontestable, and are dealt with as
evidencing by their transfer the actual delivery of the com-
modity represented by the receipt.    Their value as a convenient
and safe method of commercial dealing and their ready negotia-
bility would be diminished, if not practically destroyed, should
the warehouseman issuing the receipt be permitted to assert as
against subsequent holders private agreements with, or personal
claims against, the original holder.    In truth, the receipt in
question practically embodied on its face the provisions now
found in our statute law (see Laws 1904, ch. 89, p. 125), by
which all warehouse receipts are made "conclusive evidence in
the hands of a *bona fide* holder for value" that the property men-
tioned in the receipt has been received, and entitles such holder
"to a delivery of the property so stored or deposited, or to the
value thereof."

In view of the fact, therefore, that there is no well-founded
inference of collusion or fraud on the part of the bank, the trial
judge correctly refused to go into the question of whether the
receipt in question was issued to the original holder by mistake

or through carelessness on the part of the warehouseman. Even had the proffered evidence been admitted, and the fact of the mistaken issuance been clearly established as before shown, it would not have availed as against a *bona fide* holder. There is absolutely no proof in the record that the bank knew or had any reason to suspect that the receipt sued on had been issued in lieu of another receipt for twenty-six bales of cotton in question between the warehouse company and the cotton company. The contention that, because one of the officers of the bank witnessed the execution of a paper by which the cotton company undertook and agreed to indemnify the warehouse company, should it subsequently develop that a certain receipt then delivered the cotton company, for twenty-six bales of cotton, was improperly issued, thereby the bank received such notice as should have put it on strict inquiry before accepting any other receipts from the cotton company, is to our minds untenable. It might, with greater force and more plausibility, be urged that, as the warehouse company delivered such receipt, knowing at the time that it was to be negotiated and acquiescing therein, and then chose to accept the guarantee against loss of the cotton company, it was by its own conduct estopped to deny the validity of the receipt, but would be remitted to the security of its own selection, the guarantee and indemnity which it had accepted from the cotton company. It is an elemental principle of law that, where one of two innocent persons must suffer, the loss must fall on him by whose fault the injury was made possible. Admitting, therefore, that the receipt was issued through mistake, the superintendent of the warehouse company testified that it was through his "own carelessness;" hence, as between the bank and the warehouse company, the loss must be borne by the warehouse company, by the negligence of whose representative it was made possible.

In the absence of proof of fraudulent knowledge on the part of the bank, the court also properly excluded the testimony seek-

ing to establish the delivery of the cotton mentioned in the twenty-six bales receipt, and that by which it was sought to be proven that the bank had received the proceeds thereof. Neither question was at issue in the case made by the pleadings. The other assignments of error we think not well taken.

*Affirmed.*